## GLENDO STATE BANK v. ABBOTT, EXR.
### (No. 1067; July 17, 1923; 216 Pac. 700.)

NEGOTIABLE INSTRUMENTS—NOTICE OF DEFECTIVE TITLE—BURDEN OF
PROOF—HOLDER IN DUE COURSE—NEGOTIABLE INSTRUMENTS LAW.

1. Plaintiff named as payee in a note but suing thereon as a holder in due course, introduced the note and rested. Defendant's evidence tended to prove that he executed and delivered the note to a stock salesman for delivery to a corporation with the understanding that the corporation would either issue and deliver 500 shares of its stock to defendant or return his note; that defendant did not receive the stock—Held, sufficient to show that if negotiated at all, the note was negotiated in breach of faith, constituting a defective title within the meaning of the Negotiable Instruments Law, Comp. St. 1920, Sec. 3988.

2. Plaintiff named as payee in a note but suing thereon as transferee, assumed the burden of proof in view of Comp. St. 1920, Sec. 3992, upon an issue of defective title, that plaintiff or some person under whom it claimed, acquired the title in due course, as defined by Comp. St. 1920, Sec. 3985.

3 The maker of a note urging as a defense in an action thereon that the instrument was negotiated by a person whose title was defective, assumed the burden of proof.

4. The term "Burden to prove," as used in the Negotiable Instruments Law, Comp. St. 1920, Sec. 3992, relating to proof upon an issue of defective title, means the true burden of proof of title acquired in due course as defined by statute, by nothing less than a prepondenance of the evidence.

5. Proof that the title of a former holder was defective, destroys the presumption that the present holder of a negotiable instrument is a holder in due course.

6. To constitute notice of defective title in one negotiating a promissory note, the person to whom it is negotiated must have had such actual knowledge of the defect or knowledge of such facts that his action in taking the note amounted to bad faith.

7. While the payment of value is an important circumstance for consideration in determining the question of notice upon an issue of defective title in an action upon a

promissory note by one claiming as a holder in due course, it creates an inference of fact rather than a presumption of law, and the burden of proving absence of notice remains with the plaintiff.

APPEAL from District Court, Platte County; HON. WM. C. MENTZER, Judge.

Action by Glendo State Bank against George E. Abbott as executor of the estate of P. J. Hall, deceased, upon a promissory note. There was judgment for defendant and plaintiff appeals.

*Kinkead, Ellery* and *Henderson for appellant.*

The record establishes that the note in controversy was executed and delivered by respondent to Dix and thereafter transferred to appellant in due course; appellant's bank was allowed authority to engage in the sale of stock of other corporations; Reitter its cashier was interested in the note, but in this transaction did not, and could not legally act for the bank since the bank was without power to act for itself. (3 R. C. L. 457; Grow v. Cockrill, 36 L. R. A. 89; Bank v. Armstrong, 65 Fed. 932; Rock Sprgs. Bank v. Luman, 6 Wyo. 123; Com. Bank v. National Bank, 104 A. S. R. 879.) The powers of a State Bank are enumerated by Sec. 5135, Comp. St. all other powers are prohibited. (3 R. C. L. 419-422; 7 C. J. 585-589; Preston v. Bank, (Mich.) 81 N. W. 920.) Appellant was not bound by knowledge possessed by Reitter, as to the nature of the transaction. (Simmons v. Cissina, 100 Pac. 200; Bank v. Herstein, 149 Pac. 1109; Richardson v. Watson, 26 So. 422; Jones v. Bank, 90 N. W. 912; Bank v. Cromwell, 173 Pac. 826.) The defense of fraud and failure of consideration is not available as against appellant; Reitter being individually interested in the note sold to appellant bank, the knowledge or notice which he had of the manner in which the note was procured is not imputable. (Hummell v. Bank, 37 N. W. 954; Bank v. Bevin, 45 Atl. 954; Trust Co. v. Louisville Co., 75 Fed. 433; Harriman Bank v. Seldomridge, 240 Fed. 111;

In re U. S. Co. 239 Fed. 703; Trust Co. v. R. R. Co., 191 Fed. 566; Carlisle v. Norris, 109 N. E. 564; Hilliard v. Lyons, 180 Fed. 685; Lilly v. Bank, 178 Fed. 53; Bank v. Forsyth, 108 Pac. 914; Bank v. Thompson, 118 Fed. 798.) Knowledge of an agent concealed from his principal while the agent is dealing with the principal on his own account, is not to be imputed to the principal even though the agent, assuming to act as such, did whatever was done on the part of the principal in the transaction with himself, if disclosure would defeat his purpose. (Finley v. Cowles, 61 N. W. 998 (Ia.) Bank v. Martin, 150 Pac. 320 (Colo.) Levi Co. v. Kauffman, 114 Fed. 170; Corroran v. Co., 23 N. E. 727; Am. Surety Co. v. Pauley, 170 U. S. 133; Bank v. Jackson (Utah) 160 Pac. 287; Bank v. Ozias, 209 S. W. 580; Bank v. Payne, 25 Conn. 444.) A payee of a promissory note may be a holder in due course. (Armstrong v. Bank, 133 U. S. 433; Brill Co. v. Norton, 75 N. E. 1090; Bank v. Trust Co., 122 N. W. 547; Merchants Bank v. Smith, 196 Pac. 523.) Though it must be conceded that a conflict of authorities exists which did not obtain prior to the adoption of the Uniform Negotiable Instruments Law, and the rule that a payee may not be a holder in due course has not been followed by the majority of the later cases. (Bank v. Smith, (Mont.) 196 Pac. 523; Brown v. Rowan, 154 N. Y. S. 1098; Trust Co. v. Tilton, (Mass.) 105 N. E. 605; National Inv. Co. v. Corty, 111 N. W. 357; Lilly v. Farrer, 17 Blanc DuRoi, (Quebec) 554; McDonald v. Cook, 19 Ontario 267.) The Wyoming Statute provides that a payee may become a holder in due course. (3963, 3985, 4124 Comp. St.) The court erred in permitting the witness Hall to testify as to representations made after the note was signed and that he had confidence in Dix.

*Marion A. Kline* and *Oscar O. Natwick* for respondent.

Section 3985 Comp. St. defines a holder in due course; the note was procured by fraud; Hall was induced to execute a paper different from what he intended to sign and

the note thus obtained was and is null and void in the hands
of a holder in due course.  (Chapman v. Rose, 56 N. Y. 137;
Biddeford Nat. Bank v. Hill, 102 Me. 346, 66 Atl. 721;
Jewelry Co. v. Darnell, 135 Ia. 555, 113 N. W. 344; Freed-
ly v. French, 154 Mass. 339, 28 N. E. 273; Green v. Wilkie;
(Ia.) 66 N. W. 1046; Whitney v. Snyder, (N. Y.) 2 Lan-
sing 477; Walker v. Ebert, 29 Wis. 196; Anderson v. Wal-
ter, 34 Mich. 113; Bank v. Lierman, 5 Neb. 247; Puffer v.
Smith, 57 Ill. 527; Trambly v. Ricard, 130 Mass. 259; Gibbs
v. Linabury, 22 Mich. 479; Foster v. McKinnon, L. R. 4 C.
P. 704; Western Mfg. Co. v. Cotton & Long, (Ky.) 104 S.
W. 758; Whipple v. Brown, (N. Y.) 121 N. E. 748; Wilcox
v. Amer. Tel. Co., 176 N. Y. 115, 68 N. E. 153; Smith v.
Ryan, 191 N. Y. 452, 84 N. E. 402; Lottes v. Knospe, 144
Wis. 426, 129 N. W. 614; Binck v. Railway Co., 111 Ill.
351.)   The bank had no right or power to pay the proceeds
of the note to Dix.  (Kuder v. Greene, (Ark.) 82 S. W.
836; Apostoloff v. Levy et al., 170 N. Y. S. 930; Bowles Co.
v. Fraser, (Wash.) 109 Pac. 812; Vore v. Rosenberg,
(Neb.) 11 N. W. 879; Camp v. Sturdevant, (Neb.) 21 N.
W. 449; Chariton Plew Co. v. Davison, (Neb.) 20 N. W.
256; Hathaway v. Delaware Co., (N. Y.) 78 N. E. 153.)
Error is never presumed.  (O'Brien v. Clark, 4 Wyo. 443.)
The three propositions advanced by appellant do not apply;
Reitter and Dix were not engaged in the perpetration of a
fraud upon the bank but upon Hall.  They merely used the
bank in their fraudulent designs upon Hall; the question
whether a payee named in a note may become a holder
thereof in due course is not here involved; the question
is whether the plaintiff was a holder in due course; the
weight of authority is against the proposition that a payee
may become a holder in due course.   (Bank v. Walch,
(Ore.) 147 Pac. 534; Bowles Co. v. Fraser, (Wash.) 109
Pac. 812; Bank v. Edwards, (Mo.) 147 S. W. 978; Long v.
Shafer, (Mo.) 171 S. W. 690; Long v. Mason, (Mo.) 200 S.
W. 1062; Hagan v. Bigler, (Okla.) 49 Pac. 1011; Empire
Trust Co. v. Manhattan Co., 162 N. Y. Sup. 629; Hathaway

v. Delaware Co., (N. Y.) 78 N. E. 153; Herdman v. Wheeler, 1 K. B. 361; Lewis v. Clay, 67 L. J. Q. B. (N. S.) 224; Van Der Ploeg v. Van Zuuk, (Ia.) 112 N. W. 807; So. Realty Corp. v. Bank (Ky.) 198 S. W. 546; Builder's Lime & Cement Co. v. Weimer, (Ia.) 151 N. W. 100; Devey & Kuhn Co. v. Huttig, (Ia.) 156 N. W. 412; Miller v. Campbell, 160 N. Y. Sup. 834; Wood v. Finley, (N. C.) 69 S. E. 502; First Nat. Bank v. Exchange Nat. Bank, (Kan.) 164 Pac. 138; Bank v. Vaughn, (Kan.) 151 Pac. 118; Nelson v. Southworth, (Kan.) 144 Pac. 835; Bank v. Utterback, (Ky.) 197 S. W. 534; 184 N. W. 265 (S. D.), 212 Pac. 598 (Okla.)   As appears from the record appellant, if he became a holder of the note in due course did so by transfer from Dix, but it was not negotiated within the provisions of the statute, the finding of the trial court is based upon competent evidence and should not be disturbed.   (Colemans Exr. v. Meade, 76 (Ky.) 358; Browns v. Lutin, 64 Pac. 674.)

KIMBALL, Justice.

This appeal is for review of a judgment for defendant in an action on a promissory note.   The present respondent is the executor of the will of defendant who died pending the appeal.

The plaintiff is named as payee in the note.   At the trial it introduced the note, and rested.   The defendant then introduced evidence tending to prove that he signed the note and delivered it to one Dix, who was soliciting subscriptions for shares of stock in a corporation called the Western Life and Casualty Company; that Dix took the note for the purpose of delivering it to that company with the understanding that the company would issue and send to defendant 500 shares of its capital stock, or return the note; that the defendant did not receive the shares of stock, and later was informed that plaintiff's assistant cashier held the note. This evidence was not contradicted, and we think it was sufficient to establish that the note, if negotiated at all, was.

negotiated in breach of faith, and, therefore, that the title of the person who negotiated it was defective within the meaning of the Negotiable Instruments Law. Wyo. C. S. 1920, § 3988, N. I. L. § 55; Holdsworth v. Blyth & Fargo Co., 23 Wyo. 52; 146 Pac. 603; McKnight v. Parsons, 136 Ia. 390, 113 N. W. 858, and note thereto as reported in 22 L. R. A. (N. S.) 718; 125 Am. St. Rep. 265, 15 Ann. Cas. 665; Pierson v. Huntington, 82 Vt. 482; 74 Atl. 88, 29 L. R. A. (N. S.) 695, 137 Am. St. Rep. 1029; Kennedy v. Spilka, 72 Misc. Rep. 89, 129 N. Y. Supp. 390; Beach v. Nevins, 162 Fed. 129; 89 C. C. A. 129, 18 L. R. A. (N. S.) 288; College v. Thomas, 40 Wis. 661.

The trial was had without a jury and there were no special findings. As we think the pleadings and evidence were sufficient to support a finding for defendant on the question of negotiation in breach of faith, we deem it unnecessary to refer to other evidence in support of the claim that the note was obtained by fraud. The important issue, as we shall see, was whether the plaintiff was a holder in due course.

How it happened that the plaintiff bank was named as payee in the note was not explained. Only Dix and defendant were present when the note was signed. Dix did not testify, and defendant, who was unable to read, stated that he relied on Dix's representations as to the contents of the note, and believed when he signed it that it was payable to the casualty company.

The defendant contends that no payee can be a holder in due course. The point thus raised we do not decide, but for the purposes of this case shall assume that an instrument may be negotiated to a payee under such circumstances that he becomes a holder in due course.

The plaintiff claimed a right to recover, not as payee, but as transferee, and thus asserted that the instrument was negotiated. If so, it was negotiated by one whose title was defective and the burden was on the plaintiff to prove that it or some person under whom it claimed acquired the title

as a holder in due course. C. S. § 3992, N. I. L. § 59. This rule, plainly stated in the statute, was recognized and applied in Holdsworth v. Blyth & Fargo Co., supra, at page 62 of 23 Wyo., 146 Pac. 603, but it may be well to say something more in regard to the burden of proof which the holder of the note must assume in such cases.

It is suggested by appellant that Section 3992 is declaratory of the common law, including the law merchant. A full consideration of this suggestion might lead to an extended investigation which would be of no practical importance and something which we conceive it to be the purpose of the Negotiable Instruments Law to render unnecessary. We shall be satisfied for the present on this point to say that in England, as late as 1877, before the passage in 1882 of the Bills of Exchange Act, the forerunner of our Negotiable Instruments Law, it was doubtful whether in such a case the burden was on the plaintiff to prove both good faith and the giving of value, or only the latter. Jones v. Gordon, 2 App. Cas. 616. This doubt was deemed settled by the Bills of Exchange Act, Section 30 of which provided that the holder must prove that ''value has in good faith been given for the bill.'' Under that act it is held that the holder must prove both that he gave value and that he had no notice of the fraud. Tatam v. Haslar, 23 Q. B. Div. (1889), 345, to this effect, was decided several years before the adoption of the Negotiable Instruments Law by any state of our country. It is not necessary to say whether a similar doubt existed in this country before the Negotiable Instruments Law. Compare Giberson v. Jolley, 120 In. 301, 22 N. E. 306, with Davis v. Bartlett, 12 Oh. St. 534; 80 Am. Dec. 375, and see 1 Daniel on Neg. Ins. (6th Ed.) §§ 814a, 819. We may be content to observe that if there was a conflict between the authorities on the subject, it must be considered settled by the plain terms of that law, which, as applied to this case, placed on the plaintiff the burden of proving not only that it paid value before maturity, but also all the other facts necessary to show that

it was a holder in due course, including the fact that it had no notice of the defect in the title of the person who negotiated the note.   C. S. Sec. 3985, N. I. L. Sec. 52.

Inasmuch as the term "burden to prove" sometimes is used carelessly so that it is not clear whether is meant the true burden of proof or only the burden of evidence, we may say that in our opinion the words were used in the Negotiable Instruments Law and in Holdsworth v. Blyth & Fargo Co., supra, advisedly with the intention of describing the true burden of proof to be satisfied by nothing less than a preponderance of the evidence on the issue.   Brannan on N. I. L. (3rd Ed.) p. 218; Hoge v. Smith, 130 Wis. 326; 110 N. W. 192; Parsons v. Utica Cement Mfg. Co., 80 Conn. 58; 66 Atl. 1024; Winter v. Nobs, 19 Ida. 18; 112 Pac. 525, Ann. Cas. 1912 C. 302; American Nat. Bank v. Fountain, 148 N. C. 590; 62 S. E. 738; Bank v. Buck Bros., 161 Ia. 362; 142 N. W. 1004; Ireland v. Shore, 91 Kans. 326; 137 Pac. 926; Brown v. Feldwert, 46 Ore. 363; 80 Pac. 414; Keene v. Behan, 40 Wash. 505; 82 Pac. 884; Mee v. Carlson, 26 S. Dak. 365; 117 N. W. 1033, 29 L. R. A. (N. S.) 351; Second Nat. Bank v. Hoffman, 229 Pa. 429; 78 Atl. 1002; DeJonge & Co. v. Woodport Hotel Co., 77 N. J. L. 233; 72 Atl. 439; Regester's Sons Co. v. Reed, 185 Mass. 228; 70 N. E. 53; Cf. Downs v. Horton, 287 Mo. 414, 230 S. W. 103.   We call special attention to the discussion of this point in Leavitt v. Thurston, 38 Utah 351, 113 Pac. 77.   The proof that the former holder's title was defective destroys the presumption that the present holder is a holder in due course.   Parsons v. Utica Cement Mfg. Co., and De-Jonge v. Woodport Hotel Co., supra; Cook v. American Tubing & W. Co., 28 R. I. 41, 65 Atl. 641, 9 L. R. A. (N. S.) 193.

The case at bar, as here considered, presented two issues. The first, the claim of defendant that the instrument was negotiated by a person whose title was defective, and the second, the claim of plaintiff that it was a holder in due course.   On the first issue the defendant had the burden of

proof, and on the second the plaintiff had that burden. The general finding by the trial court meant a finding in favor of the defendant on both issues. We have already said that the finding on the first issue should not be disturbed, and it now remains to be decided whether the same is to be said of the finding on the second issue.

Though the statute places on the plaintiff the burden of proving, among other things, lack of notice of the defect in the title of the former holder, it does not prescribe the kind or amount of evidence that he must produce to meet the burden. That question is one to be controlled more by the law of evidence than by the law of negotiable instruments. To constitute notice the plaintiff must have had actual knowledge of the defect, or knowledge of such facts that his action in taking the note amounted to bad faith. C. S. Sec. 3989, N. I. L. Sec. 56. When he is called upon to prove lack of notice he is required to establish a negative. However, the facts of which the plaintiff had notice, and all circumstances surrounding the negotiation of the paper to him, are so peculiarly within his own knowledge, that it is but reasonable to require him to prove them. Giberson v. Jolley, supra. We think, therefore, he must show under what circumstances and for what value he became the holder of the instrument. This rule is founded on authorities which, before the Negotiable Instruments Laws, recognized the duty of such a holder to prove both good faith and the giving of value. 2 Greenleaf on Ev., Sec. 172; First National Bank v. Green, 43 N. Y. 298; Canajoharie Nat. Bank v. Diefendorf, 123 N. Y. 191; 25 N. E. 402, 10 L. R. A. 676; Sullivan v. Langley, 120 Mass. 437; Cover v. Myers, 75 Md. 406; 23 Atl. 850, 32 A. S. R. 394; Holme v. Karsper, 5 Bin. 469; Landauer v. Sioux Falls Imp. Co., 10 S. Dak. 205; 72 N. W. 467; Giberson v. Jolley, supra; Swett v. Hopper, 62 Me. 54; Tramling v. Duffey, 14 Mont. 567; 37 Pac. 363, 43 Am. St. Rep. 658. And see Paton v. Coit, 5 Mich. 505, 72 Am. Dec. 58, where, under a statute, it was thought that the holder might not be required to show actual want of

notice, but should show "the nature of the transaction accompanying the transfer."

The plaintiff in the case at bar contends that proof of purchase for value before maturity is a *prima facie* meeting of the burden cast upon the holder; that the burden of evidence then shifts to the maker who is required to prove the holder's notice or knowledge, and that in the absence of such proof by the maker, the holder is entitled to recover. The cases cited to support this contention may be divided into three groups.

The cases in the first group, Davis v. Bartlett, 12 Oh. St. 534, 80 Am. Dec. 375, and King v. Doane, 139 U. S. 166, 11 Sup. Ct. 465, 35 L. ed. 84, seem to favor the rule, which may have been justified at common law, that the only burden on the holder of such an instrument is to prove a purchase for value. We have already said that if that was formerly the law it has been changed by the statute.

In the second group are the cases of Stevens v. Pierce, 79 Okla. 290, 193 Pac. 417; 18 L. R. A. 7; Elmore County Bank v. Avant, 189 Ala. 418; 66 So. 509; Walden v. Downing, 4 Ga. App. 534, 61 S. E. 1127 (following Merchants & Planters Nat'l. Bank v. Trustees, 62 Ga. 271); Meyer v. Lovdal, 6 Calif. App. 369; 92 Pac. 322; Hall v. E. W. Wells & Son., 24 Calif. App. 238; 141 Pac. 53; Shephard v. Hunt, 43 Cal. App. 630, 185 Pac. 677. They recognize the duty of the holder to prove both good faith and payment of value, and decide that he makes out a *prima facie* case by showing a purchase for value before maturity in the usual course of business. In most if not all of them the circumstances under which the holder took the instrument were disclosed, and we may be justified in assuming that if they had not been disclosed it would have been held that the holders had not met the burden of proof. If the holder must prove that he took the instrument in the usual course of business it would seem that he must show the circumstances under which he took it. The effect of these cases is to support the rule as we have stated it. We avoid the use

of the phrase ''usual course of business'' which does not appear in the statutory definition of a holder in due course and does not seem susceptible of a very satisfactory definition. 8 C. J. 470; Roberts v. Hall, 37 Conn. 205; 9 Am. Rep. 308; Matlock v. Scheuerman, 51 Ore. 49, 93 Pac. 823; 17 L. R. A. (N. S.) 747.

In the third group are included Market etc. Nat. Bank v. Sargent, 85 Me. 349; 27 Atl. 192, 35 A. S. R. 376; Henry v. Sneed, 99 Mo. 407; 12 S. W. 663, 17 Am. St. Rep. 580; First Nat. Bank v. Flath, 10 N. Dak. 281, 86 N. W. 864, referred to in American Nat. Bank v. Lundy, 21 N. Dak. 167; 129 N. W. 99; Bank v. Foote, 12 Utah 157, 42 Pac. 205, and Hoge v. Smith, 130 Wis. 326, 110 N. W. 192. These cases agree that the holder has the burden of proving both good faith and the giving of value, but each of them contains language which seems to lend support to plaintiff's contention that the holder, on proof of payment of full value before maturity, is entitled to the benefit of a presumption that he purchased without notice of the fraud, and thereupon the burden of proving notice shifts to the defendant. It appears from a careful reading of the opinions that the so-called presumption serves in lieu of direct proof of lack of notice of the fraud where the other circumstances do not tend to show notice, and that it was not invoked for the purpose of relieving the holder of the burden of showing such other circumstances. If so understood, these cases do not oppose our views. The payment of value is an important circumstance to be taken into consideration in determining the question of notice. The payment of full value is not only entitled to great weight, but no doubt would be conclusive in the absence of evidence tending to show notice, but we think this would be the result of an inference of fact instead of a presumption of law. Though we concede the propriety of such an inference, we must not lose sight of the fact that the Negotiable Instruments Law places on the holder the burden of proving the facts from which it may be drawn. The burden of proof does not shift.

Though the holder paid full value for the note he may yet have had notice of the defect, and the reasons still exist for requiring him to show under what circumstances he became the holder. If in fact he had no notice, the proof of those circumstances will complete the evidence from which the inference in his favor may be drawn. If he fail to show such circumstances as are within his knowledge and power to prove, that very failure may justify an inference that he would have done so had they not been unfavorable. 1 Wigmore on Ev., §§ 285-286.

Tested by the rule which we approve there can be no doubt that the trial court was justified in finding that the plaintiff was not a holder in due course. The person who was plaintiff's cashier at and before the time when it acquired the note was a witness for both parties, and the only witness who had ever been an officer or agent of the plaintiff. He testified that he had general knowledge of the business being done in that community by Dix; was convinced that the business was fraudulent; had decided that the bank would not buy any paper of Dix, and had notified the assistant cashier of this decision. Afterwards, without the cashier's knowledge and probably in his absence, the note in question was taken by the assistant cashier, who, though present at the trial, did not testify. The bank records of the transfer were not produced. The casher saw the note, before maturity, in the possession of the plaintiff bank. He testified that the plaintiff paid full value for the note, but from his other testimony it seems that this was a mere assumption, and the court was left in the dark as to when, how and to whom the consideration was paid, and also as to the identity of the person from whom the note was received. If we could concede that the evidence was sufficient to prove payment of full value before maturity, which we understand is all that is claimed for it, it is obvious that it fell far short of showing the circumstances under which the plaintiff became the holder. Evidence of these circumstances might have been so easily produced by plaintiff that

its non-production was clearly a failure to meet the burden of proof.

The theory on which we approve the findings of the trial court renders other questions immaterial. The judgment will be affirmed.

*Affirmed.*

Potter, Ch. J., and Blume, J., concur.

NOTE—See under (1-7) Bills and Notes 8 C. J. 708, 710, 1289, 1291 and 1295.